**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN P. RAND, and NORMAN A. LEVY, individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-01513 |
| | ) | |
| KILWINS QUALITY CONFECTIONS, INC., d/b/a Kilwins, a Michigan Corporation, | ) ) ) | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| | ) | |
| Defendant. | | |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, John P. Rand ("Rand"), and Norman A. Levy ("Levy"), individually, and on behalf of all others similarly situated, by and through their undersigned attorneys, based upon personal knowledge with respect to themselves, on information and belief derived from investigation of counsel, and a review of public documents as to all other matters, complain against Defendant, Kilwins Quality Confections, Inc., d/b/a Kilwins (hereinafter "Kilwins"), as follows:

**INTRODUCTION**

1.      This case involves an unlawful pattern and practice of unfair and deceptive trade practices on the part of Kilwins - in its packaging, marketing and selling of candy, confectionary, and chocolate products in containers and packaging that materially overstate the volume of the contents - including the number of servings and caloric content.

2.      Kilwins sells its candy, confectionary and chocolate products through franchisees located in twenty-six (26) states, the District of Columbia, and throughout all fifty (50) states via its website located at www.kilwins.com where Kilwins advertises its products for sale and through company-owned stores.

1

3.      More specifically, while proclaiming **"[o]ur values are simple; Treat others as you want to be treated,"** at the same time, Kilwins has, for many years, been packaging, labeling, marketing and selling its candy, confectionary and chocolate products – including the "Caramel Topping," and the "Sea-Salt Caramel Topping" and, upon information and belief, the "Fudge Topping" - as well as the "Chocolate Fudge Topping," "Chocolate Topping"  and the "Classic Shredded Chocolate", the "Dominican Shredded Drinking Chocolate" and "Single Origin Peruvian Drinking Chocolate" and, upon information and belief, various other toppings and shredded chocolates (collectively the "mislabeled products"),  which are mislabeled and misbranded to materially overstate the actual volume of, and the number of servings contained in, the containers and packaging in which they are advertised and sold and similarly materially understate the caloric content of a serving.

4.      While at the time the initial Complaint in this matter was filed, Kilwins had recently *quietly* begun correcting labeling on the mislabeled products, it has failed to compensate thousands of consumers who, over a fifteen (15) year period or more preceding the correction, have, upon information and belief, been materially overcharged. It had also failed to remove mislabeled products on the shelves of the stores.

5.      Kilwins' alleged conduct violates various consumer protection laws and food labeling statutes in states where it does business.  Plaintiffs seek damages for themselves, as well as the Multi-State Class; and, alternatively, for the State-Wide Classes or Sub-Classes, as well as recission, disgorgement of profits, statutory damages, punitive damages, attorneys' fees, interest and costs, as well as injunctive relief.

**THE PARTIES**

6.      Plaintiff Rand is an adult individual and citizen of the State of Illinois residing at 2020 North Lincoln Park West, Apartment 8L, Chicago, Illinois 60614.  Rand is a consumer of Kilwins' mislabeled products.

7.      Plaintiff Levy is an adult individual and citizen of the State of Illinois residing at 30 West Erie St., Chicago, Illinois 60654.  Levy is a consumer of Kilwins' mislabeled products.

8.      Defendant Kilwins is a corporation organized and existing under the laws of the State of Michigan, with its headquarters and principal place of business located at 1050 Bay View Road, Petoskey, Michigan 49770.

9.      Kilwins was formed in or about 1947 by Don and Katy Kilwin, and has been manufacturing, packaging, marketing and selling candy, chocolate, ice cream and bakery products consistently since 1947 and, currently, throughout the nation.  The Kilwins brand promises the "finest ingredients", the "highest quality products," and "great service." As a result, the affected products typically command a higher price in comparison to other competitive products of similar quality and attributes.

10.     Kilwins also advertises, markets and sells chocolate, fudge, confectionary and ice cream nationally via its website at www.kilwins.com, and via both company-owned and franchise-owned stores in twenty-six (26) states and the District of Columbia, *i.e.*: Illinois, Michigan, Wisconsin, Indiana, Ohio, Texas, Louisiana, Arkansas, Alabama, Georgia, Pennsylvania, New York, New Hampshire, Massachusetts, Connecticut, Delaware, Virginia, Missouri, Tennessee, Maryland, North Carolina, South Carolina, Florida, New Jersey, Rhode Island and Colorado, and the District of Columbia.

11.     Kilwin's annual product sales exceed $100,000,000.00 (One Hundred Million Dollars).

## FACTS ALLEGED IN SUPPORT OF JURISDICTION AND VENUE

### A. Compensatory Damages.

#### Toppings.

12.     Since at least 2000, Kilwins has maintained an on-line store to sell products (located at http://kilwins.com/retail_shop) from its flagship store located in Petosky, Michigan – and where Kilwins is headquartered. (*See http://waybackmachine.com*).

13.     The Toppings were first introduced to the public by Kilwins for sale on or before January 1, 2006, and were designated at the time as "Chocolate Fudge Topping" and "Chocolate Topping."

14.     Since at least 2006, however, Kilwins has been selling both the "Chocolate Fudge Topping" and the "Chocolate Topping" from its on-line store at http://kilwins.com/retail_shop.

15.     Kilwins has also been selling variations of the Toppings Group No. 1, Toppings Group No. 2, the "Chocolate Fudge Topping," and "Chocolate Topping" in a twenty (20) ounce version - as it does today - at both its retail stores and its on-line store since at least 2006, and, upon information and belief, such products have been mislabeled as the other Toppings, as alleged herein.

16.     During the period from or about January 1, 2016, through March 18, 2021, the date that the initial Complaint in this matter was filed, Kilwins claims that it has manufactured, marketed and sold *over* 47,791 units of Caramel Topping, Sea Salt Topping and Fudge Topping. ("Toppings Group No. 1").

17.     Further, during the period from January 1, 2016, through March 18, 2021, Kilwins claims that it manufactured, marketed and sold over 2,315 units of Single Dominican Republic Topping, Peruvian Chocolate Fudge Topping and another topping. ("Toppings Group No. 2").

18.     Upon information and belief, thousands of variations of the units of the Toppings Group No. 1, Toppings Group No. 2, "Chocolate Fudge Topping" and "Chocolate Topping" were

sold between January 1, 2006, and December 31, 2015, at a price of approximately 10.95 to $19.95 per unit, not including state and local sales taxes (which taxes average approximately five percent (5%) of the retail purchase price).

19.    Each unit of Toppings Group No. 1 sold by Kilwins, after December 31, 2015, at its retail stores were sold at prices ranging from $16.99 to $21.50, *before* state and local sales taxes were added (which taxes averaged approximately five percent (5%) of the retail purchase price).

20.    Each unit of Toppings Group No. 2 sold by Kilwins after December 31, 2015, at the retail store level were sold at prices ranging from $14.95 to $18.95, before state and local sales taxes were added (which taxes averaged approximately five percent (5%) of the retail purchase price).

21.    Each unit of Toppings Group No. 1 sold by Kilwins through the website http://www.kilwins.com/retail_shop, **after** December 31, 2015, were sold at prices ranging from $14.95 to $18.95, before state and local sales taxes were added (which taxes averaged approximately five percent (5%) of the retail purchase price), plus shipping and handling which ranged from $10 to $25 dollars per shipment depending upon the manner of delivery.

22.    Each unit of Toppings Group No. 2 sold by Kilwins through the website http://www.kilwins.com/retail_shop, **after** December 31, 2015, were sold at prices ranging from $14.95 to $18.95, before state and local sales taxes were added (which averaged approximately five percent (5%) of the retail purchase price), plus shipping and handling which ranged from $10 to $25 dollars per shipment depending upon the manner of delivery.

23.    Upon information and belief, during the period January 1, 2006, through December 31, 2015, thousands of units of the Chocolate Fudge Topping, the Chocolate Topping, the Toppings Group No. 1 and the Toppings Group No. 2 were sold via Kilwins' internet store found at http://www.kilwins.com/retail_shop and through its retail stores.

24.     Each unit of Chocolate Fudge Topping, Chocolate Topping, Toppings Group No. 1 and Toppings Group No. 2 were sold by Kilwins through the website http://www.kilwins.com/retail_shop and its retail stores between January 1, 2006, and December 31, 2015, were sold at prices ranging from approximately $10.95 to $16.95, before state and local sales taxes were added (which averaged approximately five percent (5%) of the retail purchase price), plus shipping and handling which ranged from $5 to $15 dollars per shipment depending upon the manner of delivery.

**Shredded Chocolates**

25.     The Shredded Chocolates were first introduced to the public by Kilwins for sale on or about January 1, 2014, and were designated, *inter alia,* at the time as: "Dominican Shredded Chocolate" ($19.95); and "Single Origin Peruvian Drinking Chocolate" ($19.99).

26.     During the period January 1, 2016, through March 18, 2021, the date of the filing of the initial Complaint in this matter, Kilwins claims to have manufactured, marketed and sold *over* 25,944 units of Classic Shredded Chocolate. ("Shredded Chocolates Group No. 1").

27.     During the period January 1, 2016, through March 18, 2021, the date of the filing of the initial Complaint in this matter, Kilwins claims it manufactured, marketed and sold *over* 10,512 units Single Origin Peruvian Shredded Chocolate and three (3) other shredded chocolates. ("Shredded Chocolates Group No. 2").

28.     Kilwins has been selling variations of the Shredded Chocolates Group Nos. 1 and No. 2 since at least 2014, and they are mislabeled as the other Shredded Chocolates alleged herein.

29.     Upon information and belief, thousands of units of the Shredded Chocolate Group No. 1 and Shredded Chocolate Group No. 2 were sold between January 1, 2014, and December 31, 2015, at a price of approximately $16.95 to $21.50, not including state and local sales tax (which taxes averaged approximately five percent (5%) of the retail purchase price).

6

30.    Each unit of Shredded Chocolate Group No. 1 sold by Kilwins after December 31, 2015, at the retail store level were sold at prices ranging from $16.99 to $21.50, before state and local sales taxes were added (which taxes averaged approximately five percent (5%) of the purchase price).

31.    Each unit of Shredded Chocolate Group No. 2 sold by Kilwins, after December 31, 2015, at the retail store level were sold at prices ranging from $14.95 to $19.95, before state and local sales taxes were added, (which taxes averaged approximately 5 percent (5%) of the retail purchase price).

32.    Each unit of the Shredded Chocolates Group No.1 sold by Kilwins via its website located at http://www.kilwins.com/retail_shop and at its retail stores between January 1, 2014, and December 31, 2015, were sold at prices ranging from $14.95 to $19.95, before state and local sales taxes were added (which taxes averaged approximately five percent (5%) of the retail purchase price).

33.    Each unit of the Shredded Chocolates Group No. 2 sold by Kilwins via its website http://www.kilwins.com/retail_shop between January 1, 2014, and December 31, 2015, was sold at prices ranging from $14.95 to $19.95 per Unit, before state and local sales taxes were added (which taxes averaged approximately five percent (5%) of the retail purchase price), plus shipping and handling which ranged from $10 to $30 dollars per shipment depending upon the manner of delivery.

**B. Statutory Damages**

34.    In the initial Complaint, the Amended Complaint and now in this Second Amended Complaint, Plaintiffs and the proposed class seek statutory damages under the various Consumer Fraud and Consumer Protection Acts at issue in this litigation.

35.    The Consumer Fraud Acts of several of the states where Kilwins sells its products permit a consumer to recover statutory damages equal to two (2) or three (3) times the compensatory damages award.

## C. Cost of Complying With Injunctive Relief

36.     In the initial Complaint, the Amended Complaint and now in this Second Amended Complaint, Plaintiffs and the proposed class seek injunctive relief.

37.     Up to, and including, the dated filing of the initial Complaint and thereafter in this matter, thousands of bottles of the mislabeled Toppings Group No. 1 have remained on the shelves of the Kilwins' stores located throughout the United States.

38.     Up to and including the date of the filing of the initial Complaint and thereafter in this matter, thousands of bags of the mislabeled Shredded Chocolates have remained on the shelves of the Kilwins' stores located throughout the United States.

39.     The cost to Kilwins of removing and relabeling the mislabeled products on the shelves of the retailers at the time of the filing of the initial Complaint is estimated to be $1,000,000, by way of man hours, transportation, relabeling, restocking, etc.

40.      By the initial Complaint, the Amended Complaint and now this Second Amended Complaint, Plaintiffs and the proposed class seek injunctive relief against Kilwins requiring them, among other things, to relabel and restock the mislabeled products as alleged herein.

41.     Kilwins' explanation for mislabeling the volume of the Toppings Group No. 1, Toppings Group No. 2, Shredded Chocolates Group No. 1 and Shredded Chocolate Group No. 2, was because rather than using a measuring tool to measure volume (like a simple measuring cup) it used a scale to weigh the products and then attempted to extrapolate or convert that weight measurement into a volume measurement.

42.     Both before and after the initial Complaint was filed in this matter, Kilwins made no effort to refund any of the over-payments that it collected from its customers of Toppings Group No. 1, Toppings Group No. 2, Shredded Chocolates Group No. 1, Shredded Chocolates Group No. 2 and the other mislabeled products.

8

43.    Kilwins' conduct was willful, wanton and intended to deceive its customers located through the United States - and to generate a substantial profit on the sales of its products to which it was not entitled to.

44.    Kilwins fraudulently concealed their mislabeling of the Toppings Group No. 1, Toppings Group No. 2, Shredded Chocolates Group No. 1, Shredded Chocolates Group No. 2 and other mislabeled products such that the ordinary consumer would likely never discover the fraud and deceit.

45.    An award of punitive damages against Kilwins is warranted and, as a matter of Due Process, could amount to up to eight (8) times the compensatory damages award.

46.    Such an award of punitive damages is both probable and constitutionally permissible. *See Jane Doe v. Beau Parrillo,* 2021 IL 126577 (2021) (punitive damage award eight (8) times the compensatory award is found constitutionally permissible); *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408 (2003) (a single digit multiplier of compensatory damages by way of punitive damages is constitutionally permissible).

47.    Any legally possible punitive damages award against Kilwins should be considered eligible to satisfy the $5,000,000 jurisdictional amount in this case.

**CAFA/28 U.S.C § 1332(d)**

48.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are, upon information and belief, citizens of different states than Kilwins.

**Personal Jurisdiction**

49. This Court has personal jurisdiction over Kilwins because it is authorized to, and regularly conducts business in, the State of Illinois.

**Venue**

50. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Kilwins resides in this District, and many of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS SPECIFIC TO PLAINTIFFS

51. On July 21, 2020, Rand purchased the following Kilwins' products at its store located at 3519 North Clark Street, Suite C106-A, Chicago, Illinois 60657: "Caramel Topping," "Sea-Salt Caramel Topping" and "Fudge Topping" (collectively "Toppings") as well as a package of "Classic Shredded Chocolate." Rand paid $16.99 for each container of the Toppings, and $18.99 for a bag of the shredded chocolate.

52. On numerous occasions from or about at least January of 2019 and March 21, 2021, Levy made numerous purchases of the Toppings, as well as the purchase of one package of "Classic Shredded Chocolate." Levy purchased one bag of "Classic Shredded Chocolate" for $21.50 (pre-tax) on March 21, 2021, from Kilwins' Naples, Florida retail store. In the 2019 – 2020 period, Levy purchased Toppings at: Kilwins' Lake Geneva, Wisconsin retail store; and its Michigan Avenue, Chicago, Illinois retail store, and possibly elsewhere. Levy believes that he paid not less than $15.00 for each of the Toppings.

53. Kilwins' product label on the reverse of its "Caramel Topping" container states, erroneously, that there are 20 servings of 2 tablespoons each, with 110 calories per 2 tablespoon serving, in every glass container.

54. Kilwins' product label on the reverse of its "Sea-Salt Caramel Topping" container states, erroneously, that there are 20 servings of 2 tablespoons each, with 110 calories per 2 tablespoon serving, in every glass container.

55. Kilwins' product label on the reverse of its "Fudge Topping" container currently states, correctly, that there are 16 servings of 2 tablespoons each, with 140 calories per 2 tablespoon serving, in every glass container. This is a version of the *corrected* Topping product.

56. Contrary to Kilwins' representations, however, there are only **16** servings of two (2) tablespoons each in the glass containers for the "Caramel Topping," and "Sea-Salt Caramel Topping" manufactured, labeled, marketed and/or sold by Kilwins during the relevant period.

57. Also contrary to Kilwins' representations, there are 140 calories in each and every two (2) tablespoon serving, ***not*** 110 calories as represented.

58. Accordingly, the volumes of the "Caramel Topping," and "Sea-Salt Caramel Topping" are, *inter alia*, both over-stated by at least twenty-five percent (25%), or, put differently, by four (4) servings of toppings per container and the caloric content is materially understated.

59. Upon information and belief, the glass containers of Kilwins' "Fudge Topping," "Single Dominican Republic Fudge Topping," the "Peruvian Chocolate Fudge Topping," the "Chocolate Fudge Topping" and the "Chocolate Topping" and other heretofore mentioned products during the relevant fifteen (15) or more year period prior to the filing of the initial Complaint, had, prior to being corrected, also materially overstated the volume and the number of servings of the toppings, as well as the caloric content of each serving, in the same amounts as the Toppings identified above.

60. Similarly, the product information on the reverse of Kilwins' "Classic Shredded Chocolate" states that there are five (5) cups of shredded chocolate (or 80 tablespoons) in each paper container, and that the caloric content of one ¼ cup or a 4 tablespoon serving is 170 calories.

61. Contrary to Kilwins' representations, there are only approximately 4.3125 cups (or 69 tablespoons) of the "Classic Shredded Chocolate" in each such container, and a 3 tablespoon serving size of the shredded chocolate has 150 calories.

62. Thus, *inter alia,* the volume of the "Classic Shredded Chocolate" in each paper container is over-stated in excess of fifteen percent (15%), and the caloric content is also materially understated.

63. Upon information and belief, Kilwins' "Single Origin Peruvian Shredded Drinking Chocolate," and the "Dominican Shredded Drinking Chocolate" during the relevant period, had, prior to being corrected, also materially overstated the volume of shredded chocolate in the packaging and the number of shredded chocolate servings, as well materially understated the caloric content of each serving of shredded chocolate.

64. Products competitive with Kilwins' Toppings and shredded chocolates have been available for sale, at all relevant times, for as little as half of what Kilwins charges for the same products.

65. As a result of Kilwins' deceptive, dishonest and unfair practices, as alleged, Plaintiffs and, upon information and belief, thousands of other consumers of Kilwins' products, have overpaid millions of dollars for the subject mislabeled products.

66. As a direct and proximate result of the mislabeling alleged herein, Plaintiffs and the Class have been damaged - as they overpaid for the mislabeled products when other substitute products, with the same or an equivalent volume and the same quality chocolate, confectionary and candy, are available at significantly lower prices.

## DISCOVERY RULE/STATUTE OF LIMITATIONS

67. Because the Toppings and Shredded Chocolate are necessarily used by more than one person in a single household, it is not likely that a reasonable consumer of these products would ever

discover the fact that the products contain less product by volume than represented and are mislabeled.

68.    Because consumers of the Toppings and Shredded Chocolates are not likely to use the entire contents of the product at one time, it is not likely that a reasonable consumer would ever discover the fact that the products contain less product by volume than represented and are mislabeled.

69.    Because consumers of the Toppings and Shredded Chocolates are not likely to record the amount of product used from the container, it is not likely that a reasonable consumer would ever discover the fact that the products contain less product by volume than represented and are mislabeled

70.    Plaintiffs further believe that there are other candy, confectionary and chocolate products manufactured, packaged, labeled, marketed and/or sold by Kilwins that are similarly mislabeled and contain a materially lesser volume than represented by Kilwins on the labeling of its products.

71.    In view of the foregoing, Plaintiffs seek recovery on their behalf, and on behalf of the thousands of similarly-situated Class members located through the fifty (50) states and the District of Columbia, where the mis-labeled products are packaged, labeled, marketed and/or were sold to consumers over the last fifteen (15) or more years.

**CLASS ACTION ALLEGATIONS**

72.    Pursuant to FRCP 23(a), (b)(2), and (b)(3), plaintiffs bring this action on behalf of themselves and the following Multi-State Class and, alternatively, State-Wide Classes or Sub-Classes (collectively the "Class"):

***Multi-State Class:***

a.    Any person who has purchased a mislabeled or misbranded product in any of the fifty (50) states, and the District of Columbia, during the relevant period of the applicable statute of limitations (the "relevant period").

b.  In the alternative, plaintiffs bring this action on behalf of the following State-Wide Classes or Sub-Classes:

**Illinois Class:** All persons who purchased the mislabeled products and resided in the State of Illinois during the relevant period.

**Michigan Class:** All persons who purchased the mislabeled products and resided in the State of Michigan during the relevant period.

**Wisconsin Class:** All persons who purchased the mislabeled products and resided in the State of Wisconsin during the relevant period.

**Indiana Class:** All persons who purchased the mislabeled products and resided in the State of Indiana during the relevant period.

**Ohio Class:** All persons who purchased the mislabeled products and resided in the State of Ohio during the relevant period.

**Texas Class:** All persons who purchased the mislabeled products and resided in the State of Texas during the relevant period.

**Louisiana Class:** All persons who purchased the mislabeled products and resided in the State of Louisiana during the relevant period.

**Arkansas Class:** All persons who purchased the mislabeled products and resided in the State of Arkansas during the relevant period.

**Alabama Class:** All persons who purchased the mislabeled products and resided in the State of Alabama during the relevant period.

**Georgia Class:** All persons who purchased the mislabeled products and resided in the State of Georgia during the relevant period.

**Pennsylvania Class:** All persons who purchased the mislabeled products and resided in the State of Pennsylvania during the relevant period.

**New York Class:** All persons who purchased the mislabeled products and resided in the State of New York during the relevant period.

**New Hampshire Class:** All persons who purchased the mislabeled products and resided in the State of New Hampshire during the relevant period.

**Massachusetts Class:** All persons who purchased the mislabeled products and resided in the State of Massachusetts during the relevant period.

**Connecticut Class:** All persons who purchased the mislabeled products and resided in the State of Connecticut during the relevant period.

**Delaware Class:** All persons who purchased the mislabeled products and resided in the State of Delaware during the relevant period.

**Virginia Class:** All persons who purchased the mislabeled products and resided in the State of Virginia during the relevant period.

**Missouri Class:** All persons who purchased the mislabeled products and resided in the State of Missouri during the relevant period.

**Tennessee Class:** All persons who purchased the mislabeled products and resided in the State of Tennessee during the relevant period.

**Maryland Class:** All persons who purchased the mislabeled products and resided in the State of Maryland during the relevant period.

**North Carolina Class:** All persons who purchased the mislabeled products and resided in the State of North Carolina during the relevant period.

**South Carolina Class:** All persons who purchased the mislabeled products and resided in the State of South Carolina during the relevant period.

**Florida Class:** All persons who purchased the mislabeled products and resided in the State of Florida during the relevant period.

**New Jersey Class:** All persons who purchased the mislabeled products and resided in the State of New Jersey during the relevant period.

**Rhode Island Class:** All persons who purchased the mislabeled products and resided in the State of Rhode Island during the relevant period.

**Colorado Class:** All persons who purchased the mislabeled products and resided in the the State of Colorado during the relevant period.

**District of Columbia Class:** All persons who purchased the mislabeled products and resided in the District of Columbia during the relevant period.

73.     Excluded from the Class are Kilwins, and its officers, directors, legal representatives, successors, subsidiaries, and their assigns and any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court who may hear an appeal of any judgment entered.

74.     Certification of plaintiffs' claims for Class-Wide treatment is appropriate because plaintiffs can prove the elements of his claim on a Class-Wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

75.     This action has been brought and may be properly maintained on behalf of the Multi-State Class and/or State-Wide Classes proposed hereunder under FRCP 23, and satisfies its numerosity, commonality, typicality, adequacy and predominance, and superiority requirements.

76.     Plaintiffs reserve the right to amend the Multi-State Class and State-Wide Classes definitions based upon information learned through discovery.

**Numerosity - FRCP 23(a)(1)**

77.     Consistent with FRCP 23(a)(1), the members of the Class are so numerous and geographically dispersed that joinder of all members is impractical.  While the exact number of

Class members is unknown to Plaintiffs at this time, there are believed to be thousands of consumers of said mislabeled products and Class members are readily identifiable through Kilwin's sales records.

### Commonality and Predominance - F R C P 23(a)(2) and (b)(3)

78.     This action involves common questions of law and fact that predominate over any questions affecting individual Class members.  Common questions include, but are not limited to:

a.   Whether Kilwins engaged in the conduct alleged herein;

b.   Whether the conduct engaged in by Kilwins was unfair or deceptive;

c.   Whether Kilwins violated the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505, *et seq.*, with respect to Illinois citizens and residents during the relevant period;

d.   Whether Kilwins violated the Michigan Consumer Protection Act, §445.903, *et seq.*, with respect to Michigan citizens and residents during the relevant period;

e.   Whether Kilwins violated Wisconsin Stat. 100.18, *et seq.,* with respect to Wisconsin citizens and residents during the relevant period;

f.   Whether Kilwins violated Indiana Code § 24-5-0.5, *et seq.*, with respect to Indiana citizens and residents during the relevant period;

g.   Whether Kilwins violated Ohio Rev. Code 1345.01, *et seq.*, with respect to Ohio citizens and residents during the relevant period;

h.   Whether Kilwins violated Texas Bus. & Com. Code § 17.41, *et seq.*, with respect to Texas citizens and residents during the relevant period;

i.   Whether Kilwins violated Louisiana Rev. Stat. Ann. § 51:1406, *et seq.*, with respect to Louisiana citizens during the relevant period;

j.   Whether Kilwins violated Arkansas Code § 4-88-107, *et seq.*, with respect to Arkansas citizens and residents during the relevant period;

k.   Whether Kilwins violated Alabama Code § 8-19-1, *et seq.*, with respect to Alabama citizens and residents during the relevant period;

l.   Whether Kilwins violated Georgia § 10-1-390, *et seq.*, with respect to Georgia citizens and residents during the relevant period;

m.   Whether Kilwins violated 73 Pa. Stat. Ann. § 201-9-2, *et seq.*, with respect to Pennsylvania citizens and residents during the relevant period;

n.   Whether Kilwins violated New York Gen. Bus. § 350, *et seq.*, with respect to New York citizens and residents during the relevant period;

o.   Whether Kilwins violated New Hampshire Rev. Stat. § 358-A, *et seq.*, with respect to New Hampshire citizens and residents during the relevant period;

p.   Whether Kilwins violated Massachusetts Chapter 93A, with respect to Massachusetts citizens and residents during the relevant period;

q.   Whether Kilwins violated Connecticut Gen. Stat. § 42-110a., *et seq.*, with respect to Connecticut citizens and residents during the relevant period;

r.   Whether Kilwins violated Delaware, Title 6 §§ 2511, *et seq.*, with respect to Delaware citizens and residents during the relevant period;

s.   Whether Kilwins violated Virginia Code Ann. § 59.1-196, *et seq.* with respect to Virginia citizens and residents during the relevant period;

t.   Whether Kilwins violated Missouri Rev. Stat. § 407.020, *et seq.*, with respect to Missouri citizens and residents during the relevant period;

u.   Whether Kilwins violated Tennessee Code Ann. § 47-18-104, *et seq.*, with respect to Tennessee citizens and residents during the relevant period;

v.   Whether Kilwins violated Maryland Com. Law §§ 13-101, *et seq.*, with respect to Maryland citizens and residents during the relevant period;

w.  Whether Kilwins violated North Carolina Gen. Stat., Chapter 75-1.1, *et seq.*, with respect to North Carolina citizens and residents during the relevant period;

x.  Whether Kilwins violated South Carolina Code of Law § 39-5-10, *et seq.*, with respect to South Carolina citizens and residents during the relevant period;

y.  Whether Kilwins violated Florida Stat. Ann. § 501.201, *et seq.*, with respect to Florida citizens and residents during the relevant period;

z.  Whether Kilwins violated New Jersey Stat. Ann. 56:8-19, *et seq.*, with respect to New Jersey citizens and residents during the relevant period;

aa. Whether Kilwins violated Rhode Island Gen. Laws § 613.1-11, *et seq.*, with respect to Rhode Island citizens and residents during the relevant period;

bb. Whether Kilwins violated the Colorado Consumer Protection Act, § § 6-1-101, *et seq.*, with respect to Colorado citizens and residents during the relevant period;

cc. Whether Kilwins violated the District of Columbia Code § 28-3904, *et seq.*, with respect to District of Columbia citizens and residents during the relevant period;

dd. Whether Kilwins violated 410 ILCS 620/1, *et seq.*, with respect to Illinois citizens and residents during the relevant period;

ee.  Whether Kilwins breached its contract with Plaintiff and the Class;

ff.  Whether Kilwins has been unjustly enriched under applicable state laws; and

gg. Whether Kilwins should be required to disgorge all profits earned, and/or revenues received, in the sale of the mislabeled products.

79.     Each consumer fraud statute from the twenty-six (26) states and the District of Columbia where Kilwins markets and sells its products, as alleged, generally prohibit deceptive or unfair acts or practices in the course of a trade or business, and grants consumers standing to assert claims thereunder.

80.     Each of the food labeling statutes from three (3) of the states where Kilwins markets and sells its products, *i.e.* Illinois, New York and New Jersey, as alleged, prohibit the mislabeling and misbranding of food products and the advertisement for sale of the same, and grant the consumer standing to assert claims thereunder.

## Typicality - FRCP 23(a)(3)

81.   Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and the Class members were subjected to the same alleged unlawful conduct and damaged in the same way, *i.e.*, they all purchased the mis-labeled products for which the Class substantially overpaid.

## Adequacy - FRCP 23(a)(4)

82.   Consistent with FRCP 23(a)(4), Plaintiffs, and their counsel, will fairly and adequately represent the Class and have the best interests of the members of the Class in mind. Plaintiffs and their counsel are not aware of any conflicts of interest with the Class. Plaintiffs' counsel is also competent and experienced in litigating federal and state court class actions, including consumer protection claims and food labeling litigation. Plaintiffs and their counsel intend to vigorously prosecute this case in the best interest of the Class.

## Superiority - FRCP 23(b)(3)

83.     A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the Class is impracticable. Many Class members are, or may be, without the financial resources necessary to pursue this matter, and even if some could afford to litigate claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed.

84.     Individual litigation also increases the time and expense of resolving a common dispute concerning Kilwins' actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of

unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court

85. The Class may be certified pursuant to FRCP 23(b)(2) because, *inter alia*, Kilwins acted on grounds generally applicable to the Class, thereby making final compensatory relief appropriate with respect to the claims raised by the Class.

86. The Class may also be certified pursuant to FRCP 23(b)(3) Procedure because questions of law and fact common to members of the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Class Action Complaint.

## <u>COUNT I</u>
### <u>(Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act</u>
### <u>815 ILCS 505, *et seq*. ("ICFA"))</u>

1. Plaintiffs reallege Paragraphs 1 through 86 above as Paragraph 1 of Count I.

2. Plaintiffs bring this claim on their own behalf and on behalf of the Multi-State Class and the Illinois Class for a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505, *et seq*. ("ICFA").

3. The ICFA prohibits unfair or deceptive conduct in the course of a trade or business.

4. The terms "unfair" and "deceptive" as used in the ICFA are disjunctive, not conjunctive. In other words, a practice may violate the prohibition against unfairness while not violating the prohibition against deception, and vise-versa.

5. At all relevant times, Kilwins violated the ICFA by knowingly misrepresenting the volume(s), number of servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

6. Kilwins' alleged conduct was deceptive, unfair and violated the ICFA and Illinois public policy.

7.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged as a result, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume, and the same quality chocolate, and candy were available at significantly lower prices.

## COUNT II
### (Violation of the Michigan Consumer Protection Act, § 445.903, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count II.

2.      Plaintiffs bring this claim on their own behalf and on behalf of the Multi-State Class and the Michigan Class for violations of the Michigan Consumer Protection Act, § 445.903, *et seq.* ("MCPA").

3.      The MCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the MCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, and violated Michigan's public policy and the MCPA.

6.      As a direct and proximate result of said mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the subject mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT III
### (Violation of Wisconsin Stat. Ann. § 100.18, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count III.

2.      Plaintiffs bring this claim on their own behalf and on that of the Multi-State Class and the Wisconsin Class for a violation of Wis. Stat. § 100.18, *et seq.* ("Wisconsin Act").

3.     The Wisconsin Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the Wisconsin Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of Wisconsin public policy and the Wisconsin Act.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

<u>**COUNT IV**</u>
<u>**(Violation of Indiana Code § 24-5-0.5, *et seq.*)**</u>

1.     Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count IV.

2.     Plaintiffs bring this claim on their own behalf and on that of the Multi-State Class and the Indiana Class for a violation of the Indiana Code § 24-5-0.5, *et seq.* (the "Indiana Act").

3.     The Indiana Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the Indiana Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive practice, unfair, violated Indiana public policy and the Indiana Act.

6.     As a direct and proximate result of the mislabeling alleged herein, Plaintiffs and the Class have been damaged – including by overpaying for the mislabeled products when other substitute

products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT V
### (Violation of Ohio Rev. Code 1345.01, *et seq.*)

1. Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count V.

2. Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and Ohio Class for violation of Ohio Rev. Code 1345.01, *et seq.* (the "Ohio Act").

3. The Ohio Act prohibits unfair or deceptive conduct in the course of a trade or business.

4. At all relevant times, Kilwins violated the Ohio Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5. Kilwins' alleged conduct was deceptive, unfair, in violation of Ohio public policy and the Ohio Act.

6. As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT VI
### (Violation of Texas Deceptive Trade Practices-Consumer Protection Act, Texas Bus. & Com. Code § 17.41, *et seq.*)

1. Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count VI.

2. Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Texas Class for a violation of the Texas Bus. & Com. Code § 17.41, *et seq.* (the "Texas Act").

3. The Texas Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the Texas Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of Texas public policy and the Texas Act.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT VII
### (Violation of Louisiana Unfair Trade Practices and Consumer Protection Act, Rev. Stat. Ann. § 51:1406, *et seq.*)

1.     Plaintiffs reallege Paragraph 1 above as Paragraph of Count VII.

2.     Plaintiffs bring this claim on their own behalf and on that of the Multi-State Class and the Louisiana Class for a violation of Louisiana Rev. Stat. Ann. § 51:1406, *et seq.* (the "Louisiana Act").

3.     The Louisiana Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the Louisiana Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of Louisiana public policy and the Louisiana Act.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products

with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT VIII
### (Violation of Arkansas Deceptive Trade Practices Act, § 4-88-107, *et seq.*)

1. Plaintiffs repeat and reallege Paragraph 1 above as Paragraph 1 of Count VIII.

2. Plaintiffs bring this claim on their own behalf and on that of the Multi-State Class and the Arkansas Class for a violation of Arkansas Code § 4-88-107, *et seq.* (the "ADTPA").

3. The ADTPA prohibits unfair or deceptive conduct in the course of a trade or business.

4. At all relevant times, Kilwins violated the ADTPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5. Kilwins' alleged conduct was deceptive, unfair, in violation of Arkansas public policy and the ADTPA.

6. As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT IX
### (Violation of Alabama Deceptive Trade Practices Act, § 8-19-1, *et seq.*)

1. Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count IX.

2. Plaintiffs bring this claim on their own behalf and on behalf of the Multi-State Class and the Alabama Class for a violation of the Alabama Code § 8-19-1, *et seq.* (the "Alabama Act").

3. The Alabama Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the Alabama Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Alabama public policy and the Alabama Act.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT X
### (**Violation of Georgia Fair Business Practices Act § 10-1-390,** *et seq.***)**

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count X.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Georgia Class for a violation of Georgia § 10-1-390, *et seq.* (the "GFBPA").

3.      The GFBPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the GFBPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Georgia public policy and the GFBPA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XI
### (Violation of the Pennsylvania Unfair Trade Practices Act, 73 Pa. Stat. Ann. § 201-9-2, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XI.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Pennsylvania Class for a violation of 73 Pa. Stat. Ann. § 201-9-2, *et seq.* (the "PUTPA").

3.      The PUTPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated PUTPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Pennsylvania public policy and PUTPA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XII
### (Violation of New York Gen. Bus. §§ 349 & 350, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XII.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the New York Class for a violation of New York Gen. Bus. §§ 349 and 350, *et seq.* (the "New York Act").

3.      The New York Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the New York Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of New York public policy and the New York Act.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XIII
### (Violation of New Hampshire Consumer Protection Act, Rev. Stat. § 358-A, *et seq.*)

1.     Plaintiffs reallege Paragraphs1 above as Paragraphs1 of Count XIII.

2.     Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the New Hampshire Class for a violation of New Hampshire Rev. Stat. § 358-A, *et seq.* (the "NHCPA").

3.     The NHCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the NHCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of New Hampshire  public policy and the NHCPA.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XIV
### (Violation of the Massachusetts Consumer Protection Law, Chapter 93A)

1.     Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XIV.

2.    Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Massachusetts Class for a violation of Massachusetts, Chapter 93A. (the "MCPA").

3.    The MCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.    At all relevant times, Kilwins violated the MCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.    Kilwins' alleged conduct was deceptive, unfair, in violation of Massachusetts public policy and the MCPA.

6.    As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XV
### (Violation of the Connecticut Unfair Trade Practices Act, Gen. Stat. § 42-110a., *et seq.*)

1.    Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XV.

2.    Plaintiffs brings this claim on their own behalf and that of the Multi-State Class and the Connecticut Class for a violation of Connecticut Gen. Stat. § 42-110a., *et seq.* (the "CUTPA").

3.    The CUTPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.    At all relevant times, Kilwins violated CUTPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.    Kilwins' alleged conduct was deceptive, unfair, in violation of Connecticut public policy and CUTPA.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XVI
### (Violation of Delaware, Title 6 §§ 2511, *et seq.*)

1.     Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XVI.

2.     Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Delaware Class for a violation of Delaware, Title 6 §§ 2511, *et seq.* (the "Delaware Act").

3.     The Delaware Act prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the Delaware Act by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of Delaware public policy and the Delaware Act.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XVII
### (Violation of the Virginia Consumer Protection Act of 1977, § 59.1-196, *et seq.*)

1.     Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XVII.

2.     Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Virginia Class for a violation of Virginia Code Ann. § 59.1-196, *et seq.* (the "VCPA").

3.      The VCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the VCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Virginia public policy and the VCPA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XVIII
### (Violation of the Missouri Merchandising Practices Act, § 407.020, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 as Paragraph 1 of Count XVIII.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Missouri Class for a violation of Missouri Rev. Stat. § 407.020, *et seq.* (the "MMPA").

3.      The MMPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the MMPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Missouri  public policy and the MMPA

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

**COUNT XIX**
**(Violation of Tennessee Consumer Protection Act of 1977, § 47-18-104, *et seq.*)**

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XIX.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Tennessee Class for a violation of Tennessee Code Ann. § 47-18-104, *et seq.* (the "TCPA").

3.      The FCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the TCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Tennessee public policy and the TCPA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

**COUNT XX**
**(Violation of the Maryland Consumer Protection Act §§ 13-101, *et seq.*)**

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XX.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Maryland Class for a violation of Maryland Com. Law §§ 13-101, *et seq.* (the "MCPA").

3.      The MCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the MCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Maryland public policy and the MCPA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XXI
### (Violation of North Carolina Gen. Stat., Chapter 75-1.1, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXI.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the North Carolina Class for a violation of North Carolina Gen. Stat., Chapter 75-1.1, *et seq.* (the "NCCPA").

3.      The NCCPA prohibits unfair or deceptive conduct in the course of a trade or business.

## COUNT XXII
### (Violation of the South Carolina Unfair Trade Practices Act § 39-5-10, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXII.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the South Carolina Class for a violation of the South Carolina Code of Law § 39-5-10, *et seq.* (the "SCUTPA").

3.      The SCUTPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated SCUTPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.    Kilwins' alleged conduct was deceptive, unfair, in violation of South Carolina public policy and the SCUTPA.

6.    As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XXIII
### (Violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et seq.*)

1.    Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXIII.

2.    Plaintiffs brings this claim on their own behalf and on behalf of the Multi-State Class and the Florida Class for a violation of Florida Stat. Ann. § 501.201, *et seq.* (the "FDUTPA").

3.    The FDUTPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.    At all relevant times, Kilwins violated the FDUTPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.    Kilwins' alleged conduct was deceptive, unfair, in violation of Florida public policy and the FDUTPA.

6.    As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XXIV
### (Violation of the New Jersey Consumer Fraud Act § 56:8-1, *et seq.*)

1.    Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXIV.

2.      Plaintiffs bring this claim on their own behalf and on behalf of the Multi-State Class and the New Jersey Class for a violation of New Jersey Stat. Ann. 56:8-1, *et seq.* (the "NJCFA").

3.      The NJCFA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the NJCFA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of New Jersey public policy and the NJCFA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

### COUNT XXV
### (Violation of Rhode Island Unfair Trade Practice and Consumer Protection Act
### § 6-13.1-11, *et seq.*)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXV.

2.      Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Rhode Island Class for a violation of Rhode Island Gen. Laws § 6-13.1-11, *et seq.* (the "RIUTPA").

3.      The RIUTPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the RIUTPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of Rhode Island public policy and the RIUTPA.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XXVI
### (Violation of the Colorado Consumer Protection Act, §§ 6-1-101, *et seq.*)

1.     Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXVI.

2.     Plaintiffs bring this claim on their own behalf and that of the Multi-State Class and the Colorado Class for a violation of the Colorado Consumer Protection Act, §§ 6-1-101, *et seq.* (the "CCPA").

3.     The CCPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.     At all relevant times, Kilwins violated the CCPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.     Kilwins' alleged conduct was deceptive, unfair, in violation of Colorado public policy and the CCPA.

6.     As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XXVII
### (Violation of the District of Columbia Consumer Protection Procedures Act § 28-3904, *et seq.*)

1.     Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXVII.

2.      Plaintiffs bring this claim on their own behalf and on that of the Multi-State Class and the District of Columbia Class for a violation of the District of Columbia Code § 28-3904, *et seq.* (the "CPPA").

3.      The CPPA prohibits unfair or deceptive conduct in the course of a trade or business.

4.      At all relevant times, Kilwins violated the CPPA by knowingly misrepresenting the volume, servings, and caloric content of the mislabeled products, that were materially false, understated and misleading.

5.      Kilwins' alleged conduct was deceptive, unfair, in violation of D.C. public policy and the CPPA.

6.      As a direct and proximate result of the alleged mislabeling, Plaintiffs and the Class have been damaged, including by overpaying for the mislabeled products when other substitute products with the same or an equivalent volume and the same quality chocolate and candy were available at significantly lower prices.

## COUNT XXVIII
## (Violation of the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 et seq. ("IFDCA"))

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXVIII.

2.      All containers of the Kilwins' Toppings and "Classic Shredded Chocolate" are misbranded and mislabeled.

3.      Pursuant to the IFDCA, 410 ILCS 620/3.1, it is unlawful for any person to: manufacture, sell, deliver, hold, or offer for sale any food that is mislabeled.

4.      Pursuant to the IFDCA, 410 ILCS 620/3.2, it is unlawful for any person to mislabel any food.

5.      Pursuant to the IFDCA, 410 ILCS 620/3.5, it is unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

6.      Pursuant to the IFDCA, 410 ILCS 620/3.5, it is also unlawful for any person to receive in commerce any food that is misbranded or mislabeled or to deliver or proffer any such food for delivery.

7.      The IFDCA, 410 ILCS 620/11(a), provides that a food is deemed misbranded if its labeling is false.

6.      Plaintiffs and/or the Class purchased such misbranded and mislabeled products.

7.      Kilwins sold Plaintiffs and/or the Class products that were not capable of being sold legally.

8.      Plaintiffs and/or the Class members would not have purchased Kilwin's misbranded food products had they known that such were unlawful to sell, violated state and federal law, and/or were misbranded.

9.      Plaintiffs and/or the Class members were harmed as a result of their purchase of Kilwin's misbranded products and are entitled to damages, including the amounts spent on Kilwin's misbranded food products, and punitive damages.

## COUNT XXIX
### (Breach of Contract)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXIX.

2.      Plaintiffs and Kilwins entered into a contract for the purchase of the mislabeled products as represented.

3.      Pursuant to that contract, Kilwins agreed to sell Plaintiffs the Toppings and the "Classic Shredded Chocolate" in the volume represented for the price charged.

4.      Kilwins breached its contract when it sold its products to Plaintiffs that were mislabeled because such did not contain the actual volume, and servings, of candy and chocolate as represented on its labeling.

5.      As a direct and proximate result, Plaintiffs were injured, as alleged, as they paid substantially more than what they agreed to pay for the volumes and servings represented by Kilwins' packaging and labeling.

6.      Plaintiffs have performed all duties and obligations required by his contract.

## COUNT XXX
### (Unjust Enrichment)

1.      Plaintiffs reallege Paragraph 1 above as Paragraph 1 of Count XXX.

2.      Plaintiffs and the Class have been damaged as a direct and proximate result of Kilwin's alleged misconduct.

3.      As a result of Kilwins' unlawful conduct, it has and will continue to be unjustly enriched to the detriment of Plaintiffs and Class members.

4.      Kilwins has profited significantly by its unlawful sales to Plaintiffs and the Class.

5.      Kilwins' profits were a benefit conferred upon it by Plaintiffs and the Class members when they purchased said product(s).

6.      Kilwins will be unjustly enriched if it is allowed to retain its unlawful profits, and Plaintiffs, and each Class member, is entitled to recover the amount by which Kilwins was unjustly enriched at their expense.

**WHEREFORE,** Plaintiffs, John P. Rand, and Norman A. Levy, individually, and on behalf of the Multi-State Class and the State Classes, respectfully request that the Court grant certification of the proposed Multi-State Class and State Classes, including the designation of plaintiffs as the named representatives of the Multi-State Class and this respective State Class; the appointment of the undersigned as Class Counsel; the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of FRCP 23; and that the Court enter judgment in Plaintiffs' favor, and in favor of all of those who are similarly situated, and against Defendant, Kilwins Quality Confections, Inc., d/b/a Kilwins, as follows:

A.      Injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class members, including but not limited to, an order prohibiting Kilwins from engaging in the wrongful, unlawful, unfair and deceptive acts as described herein and removing all mislabeled product from the shelves of stores;

B.      An award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in amounts to be determined;

C.      An award of statutory and punitive damages, as allowed in amounts to be determined;

D.      An award of restitution or disgorgement of profits, or alternatively, revenues paid, in amounts to be determined;

E.      An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      Prejudgment interest on all amounts awarded; and

G.      Such other and further relief as the Court may deem just and proper.

Dated this 27th day of January, 2022.

**Respectfully submitted,**

Plaintiffs, John P. Rand and Norman A. Levy

By:*/s/ Daniel J. Voelker*
One of Their Attorneys

Daniel J. Voelker, Esq. (6189578)
**Voelker Litigation Group**
33 N. Dearborn Street, Suite 1000
Chicago, Illinois 60602
312.870.5430
312.254.7666
dvoelker@voelkerlitigationgroup.com

Randall B. Gold, Esq. (6190918)
**FOX & FOX, S.C.**
111 E. Upper Wacker Drive, Suite 2300
Chicago, Illinois 60601
608-258-9588
608-259-9105 (fax)

rgoldlaw@aol.com

**CERTIFICATE OF SERVICE**

I, Daniel J. Voelker, an attorney, hereby certify that on January 27, 2022, I filed the above **Second Amended Class Action Complaint** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, via the CM/ECF court filing system and served the same on all counsel of record via the same.

*/s/ Daniel J. Voelker*